## No. 2398.

### M. FARLEY *v.* E. A. DESLONDE ET AL.

1. CASE APPROVED.—The opinion in Farley v. Deslonde, 58 **Texas**, 590, affecting the question of boundary involved in this case, followed.
2. EVIDENCE—When there is no ambiguity in the language used in a deed, evidence should not be admitted that words were intended to convey a meaning different from that which they ordinarily bear, and which the law, in the connection in which they appear, attaches to them. When, however, the controversy involving the construction of words is between the original parties to the instrument, a mutual mistake may be shown as to the language used to convey the real intent of the parties.
3. SAME.—Evidence of a mutual mistake by the original vendor and vendee made in the description of land conveyed, can not be admitted to affect the rights of a subsequent purchaser who bought relying on the description given, and in ignorance of the mistake.

ERROR from Burleson. Tried below before the Hon. I. B. Mc-Farland.

*F. M. Adams,* for plaintiff in error: The subsequent declarations of Robertson and Smith, relative to the land conveyed, are admissible to show what they understood and intended, by the use of the words, "lower or south," in the deeds from Robertson to Smith, and from Smith to Darrington. (Linney v. Wood, 66 Texas, 27–30; Hancock v. Tram Lumber Co., 65 Texas, 233, 234; Gulf, Colorado & Santa Fe Railway Co. v. Jones, 63 Texas, 527; Hughes v. Sandal, 25 Texas, 163–165; McIver's Lessee v. Walker, 9 Cranch, 178; Cavazas v. Trivinio, 6 Wall., 773.)

That evidence should have been admitted to show the meaning attached to the words "lower or south," they cited Gulf, Colorado & Santa Fe Railway Company v. Jones, 63 Texas, 527; Brown v. Chambers, 63 Texas, 135, 136; Boon v. Hunter, 62 Texas, 588; Norris v. Hunt, 51 Texas, 614, 615; Hughes v. Sandal, 25 Texas, 163–165; Roberts v. Short, 1 Texas, 378–383; Bradley v. W. A. & G. Packet Company, 13 Peters, 99–102; Jackson v. Stanley, 10 Johns . 137; 2 Greenleaf on Evidence, sections 271, 290, 391; Pfeifer v. Lindsay, 66 Texas, 125; Linney v. Wood, 66 Texas, 26–30; Ragsdale v. Mays, 65 Texas, 257;

Huff v. Webb, 64 Texas, 286; Gulf, Colorado & Santa Fe Railway Company v. Jones, 63 Texas, 527; Brown v. Chambers, 63 Texas, 135, 136; Dunlap v. Sutherlin, 63 Texas, 42; Pugh v. Mays, 60 Texas, 193; Watrous v. McKie, 54 Texas, 71; Buford v. Bostick, 50 Texas, 378; Welder v. Carroll, 29 Texas, 329, 330; Epperson v. Young, 8 Texas, 135, 136; Roberts v. Short, 1 Texas, 377–383; Atkinson v. Cummings, 9 Howard, 486; Bradley v. W. A. & G. Packet Company, 13 Peters, 99–102; Jackson v. Meyers, 3 Johns, 395; 1 Greenleaf on Evidence, section 280.

That the opinion in Farley v. Deslonde, 58 Texas, construing the deed from Robertson to Smith is *obiter dicta*, he cited Revised Statutes of 1879, article 1377; Farley v. Deslonde, 58 Texas, 588–591; Frost v. Frost, 45 Texas, 840; Wampler v. Walker, 28 Texas, 599.

*F. N. Prendergast, N. P. Garrett* and *W. T. Heffley* for appellees.

STAYTON, ASSOCIATE JUSTICE. Four leagues of land in one body were granted to Sterling C. Robertson, and there was no separate survey of each league. On February 8, 1838, Robertson conveyed to Miles F. Smith a part of the four leagues by a deed which described the land conveyed as follows: "A tract of land situated, lying and being in Milam county, Texas, containing two thousand two hundred and twenty-two acres, the same being the lower or south half of premium league No. 2, from the mouth of Elm creek on the west side of the Brazos river, in Robertson county, the same being a half of a league taken from the four premium leagues granted to Sterling C. Robertson by the government of Coahuila and Texas, lying, being and situated on and near the aforesaid Elm creek." The length of the four leagues is from east to west, and the width from north to south—the length being twenty thousand varas, and the width not equal at different places on account of the unequal lengths of the surveys on Little river, back of which the four leagues are situated. The lines of the four league grant running nearest north and south run north nineteen east, while the long lines run north seventy-one degrees west.

The appellees deraign title under the deed made by Robertson to Smith, and prior to the time that was made Robertson had conveyed one league of the grant off of the eastern end to another person. Elm creek runs through almost the entire length

of the four leagues, but at no place constitutes one of the boundaries of the grant, and empties into Little river a short distance east of the eastern line of the grant. The league conveyed by Robertson before he made the conveyance to Smith is the league nearest to the mouth of Elm creek, cut off from the other three leagues by a line run north nineteen degrees east, and is designated as league number 1.

After Robertson made the conveyance to Smith he made a conveyance of one thousand six hundred and eighty-three acres to Farley & Jewett, in which he authorized them to select from the unsold part of the four leagues, and the right given by this conveyance now rests in the appellant. Under this last deed a selection was made which will not conflict with the land which the appellees are entitled to under the deed made to Smith, if the half league so conveyed is to be located next to the league sold by Robertson before the deed was made to Smith, and by a line run across the entire grant north nineteen east, at such distance from the eastern line of the four leagues as will cut off one league and a half of land.

The appellant contends that the land which passed to Smith should be thus located, and that a half of a league of land so located will be the lower or west half of league number 2, on Elm creek, i. e., that such a half league will be the half league of league number 2, nearest to the mouth of Elm creek, although it will be the eastern half of that league if it be cut off from the other part of the grant on its western boundary by a line run north nineteen east, as was league number 1.

Both parties agree that league number 2, as contemplated by the deed from Robertson to Smith, should be located next to league number 1, and its eastern limit be defined by a line run north nineteen east, at such point as will give two leagues of land between the line so run and the eastern line of the grant. The appellees, however, contend that the half of league number 2, as described by the deeds under which they claim, will embrace the southern half of league number 2, and that this league should be divided by a line run through its center on a course north seventy-one west. This question was considered on a former appeal in this case, and the construction placed on the deed under which the appellees claim, was that they now contend for. (58 Texas, 590.)

It was held that the proper construction gave to the appellees the southern half of league number 2, which requires that

league to be equally divided into two parts by a line run north seventy-one degrees west, and that the most southern half as thus defined is the land to which the appellees are entitled.

We still think this the true construction of the deed under which the appellees claim, and that the court properly instructed the jury to find a verdict in their favor, which it is agreed, under the pleadings, is but a finding that they are entitled to the southern half of **league number 2** divided by a line run on the course named.

It is, however, contended that evidence should have been admitted tending to show that, at the time the deed from Robertson to Smith was made, the inhabitants of the country generally used the words "lower" and "south" in the same sense; that when used in relation to land, each meant that part of the land farthest down any stream on which it might front, or which might run through the land.

We are of the opinion that there was no error in excluding evidence of this character; for, if believed, it might have influenced the jury to a finding which the true construction of the words used in the deed forbid.

There was no ambiguity in the deed, and the court correctly refused to hear evidence to fix upon words used in it a meaning different to that which they ordinarily bear and which the law, in their connection, attaches to them.

If the controversy was between Robertson and Smith, and it could be shown that through mutual mistake language not intended was used to describe the land intended to be conveyed, then this might be shown.

Evidence as to declarations of Robertson and Smith tending to show what land they each understood to be conveyed by the deed was offered and rejected, and we think correctly so; for vendees of Smith in the absence of knowledge that a mistake in the description of the land intended to be conveyed by Robertson to Smith had been made in the deed, if a mistake in this respect occurred, were entitled to rely on the description contained in the deed.

These conclusions are decisive of the case, and it becomes necessary to consider the assignments of error separately.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Opinion delivered January 10, 1888.