## REDDEN v. PURE OIL CO.
### No. 1479.

Court of Civil Appeals of Texas. Eastland.
Sept. 20, 1935.

Vinson, Elkins, Sweeten & Weems and David T. Searls, all of Houston, and Wynne & Wynne, of Wills Point, for defendant in error.

GRISSON, Justice.

The defendant in error, Pure Oil Company, filed suit in the district court of Van Zandt county against J. B. Redden and others to recover the title and possession of the oil, gas, and mineral estate, excepting a one-eighth royalty interest, in approximately 1.157 acres of land out of the John Walling league in said county.

On June 9, 1927, L. A. Smith and wife, Sarah Smith, executed an oil and gas lease to E. G. Lewis covering the following described property: "All that certain tract of land situated in the county of Van Zandt, State of Texas, described as follows, to-wit: Being 40 acres out of the John Walling Survey and being the NE corner of a tract of land that was set apart to L. C. Alexander, said land described as follows: Beginning at the NE corner; Thence West 475 2/10 varas to a post; Thence south 475 2/10 vrs. to post for corner on S B line of the N 1/2 of Lot No. 5, the same being the N B line of the south 1/2 of said L. C. Alexander share; Thence East with the N B line of said L. C. Alexander Survey 475 2/10 vrs. to a post for corner, the same being the NE corner of the McAdams Survey; Thence north 475 2/10 vrs. to the place of beginning and containing 40 acres of land, and being the same land described in deed from Henry York and wife Ola York to L. A. Smith, said Deed being recorded in Vol. —— page —— of Deed Records of Van Zandt Co., Texas, and containing 40 acres, more or less."

Said lease in its concluding paragraph providing: "It is the intention of this instrument to convey all the land owned by us in the John Walling Survey in Van Zandt County, Texas."

On June 11, 1927, Lewis executed an assignment of said oil and gas lease to the Pure Oil Company in so far as it covered the land described in said assignment; the description therein being as follows: "Being 40 acres out of the John Walling Survey and being the NE corner of a tract of land that was set apart to L. C. Alexander said land described as follows: Beginning at the NE corner; Thence west 475.2 vrs. to a post; thence south 475.2 vrs. to post for

Tom P. Scott and James D. Williamson, both of Waco, W. W. Harris, of Corsicana, Weatherby & Rogers, of Waco, and Chas. L. Harty, of Dallas, for plaintiff in error.

corner, on SB line of the N 1/2 of Lot No. 5, the same being the NB line of the south 1/2 of said L. C. Alexander share; thence east with the NB line of said Alexander survey 475.2 vrs. to a post for corner the same being the NE corner of the McAdams survey; thence north 475.2 vrs. to the place of beginning, and containing 40 acres of land and being the same land described in deed from Henry York and wife Ola York to L. A. Smith, said deed being recorded in Vol. —— page —— of Deed Records of Van Zandt County, Texas."

On August 16, 1928, L. A. Smith and wife executed an instrument purporting to be a correction lease which, omitting the formal parts, reads as follows:

"Whereas, on the 9th day of June A. D. 1927, a certain oil, gas and mining lease was made and entered into by and between L. A. Smith and wife, Sarah Smith, as lessors, and E. G. Lewis, lessee, covering 40 acres, more or less, out of the John Walling Survey in Van Zandt County, Texas, described in one tract in said lease which is recorded in Vol. 10, page 511, of the Deed or Oil and Gas Lease Records of Van Zandt County, Texas, to which lease and the records thereof reference is hereby made for all purposes, and which said lease is included herein and a part hereof, just as if copied herein in full, and which is now owned and held by the Pure Oil Company, and

"Whereas, it appears that there may be some errors in the field notes to said tract of said land as set out in said lease; that some of said lands are not fully described and that it is the desire of said lessors that such description be so corrected that there will be no question as to what lands were intended to be covered thereby;

"Now, therefore, know all men by these presents: That for and in consideration of the promises and of the cash consideration paid for the execution of said lease paid to us at the time of execution of said lease, receipt of which we then and now acknowledge, and for the purpose and consideration of carrying out our intention and agreement made and entered into at the time of the execution of the above mentioned oil and gas lease, and for the purpose of more accurately designating the land intended to be covered, we, L. A. Smith and wife, Sarah Smith lessor, do hereby covenant and agree with the Pure Oil Company and its assigns that it was lessor's intention in the execution of said above mentioned oil and gas lease and same shall be so corrected and changed as to express said

original intention of the parties to said lease, to include therein all land owned by us in the John Walling Survey in Van Zandt County, Texas, whether particularly described therein or not, and all of such land as we may own, claim, or have under fence is hereby specifically included in said description and covered by and made a part of said oil and gas lease above mentioned, and we do hereby ratify and confirm said above mentioned oil and gas lease as herein changed and corrected."

On July 18, 1930, L. A. Smith and wife executed to plaintiff in error Redden an oil and gas lease to the land in controversy, which he alleges is an excess out of the tract of land described in the assignment by Lewis to the Pure Oil Company, and which said company contends was conveyed, and intended to be conveyed, to it by its assignment from Lewis. The determination of this question is the gist of the lawsuit.

The cause was submitted to a jury on the following special issues which the jury answered as hereinafter shown:

"Question No. 1. Has the plaintiff shown by a preponderance of the evidence that the northwest corner of the L. A. Smith tract is located at a point approximately 489.7 varas west of the northeast corner of said Smith tract? Answer yes or no." To which the jury answered: "Yes."

"Question No. 2. If you have answered the preceding question 'yes' then you need not answer this question, but if you have answered it 'no' then you will answer this question. How many varas do you find from a preponderance of the evidence that the northwest corner of the L. A. Smith tract is located from the northeast corner of said L. A. Smith tract? Answer in varas." This question the jury did not answer.

"Question No. 3. Do you find from a preponderance of the evidence that at the time L. A. Smith and wife executed the mineral lease to E. G. Lewis it was the intention of L. A. Smith and wife to lease, if they did, to E. G. Lewis all the land they owned in the John Walling League situated in Van Zandt County, Texas?" This question the jury answered: "Yes."

Thereupon the court entered judgment in favor of the Pure Oil Company, against J. B. Redden and the other defendants for the title and possession of the land in controversy. The defendants, other than Redden, having failed to appeal, it will not be necessary to discuss the pleadings or the judgment as to them.

The court, over objections of plaintiff in error, permitted defendant in error to introduce in evidence a warranty deed from A. B. Head to Henry York, and deed from Henry York and wife to L. A. Smith, and other instruments connected with the chain of title containing a description of the land described in the assignment by Lewis to the Pure Oil Company, and the land in controversy. The above-mentioned deeds contain the following description: "Beginning at the NE corner a post being set for the said corner from which P. O. 13 in. in·dia. brs. S 59 E 4 1/3 vrs. a P. O. 15 in. dia. brs. S 81 W 12½ vrs.; Thence west 475.2 vrs. to a post from which a hickory 11 in. dia. brs. S 62½ E 1.1 vrs. and a hickory 5 in. dia. brs. S 89 W 10 vrs. Thence S 475.2 vrs. to post for corner on the S B line of the N 1/2 of the Lot No. 5, the same being the N B line of the South 1/2 of said L. C. Alexander share; Thence E with the N B line of said L. C. Alexander Survey 475.2 vrs. to a post for corner, the same being the N E corner of McAdams Survey; Thence N 475.2 vrs. to the place of beginning, said block containing 40 acres of land."

■ There is no patent ambiguity in the field notes and description contained in the assignment from Lewis to the Pure Oil Company. This being true, extrinsic evidence is not admissible for the purpose of disclosing what land was conveyed or intended to be conveyed, unless by applying the description therein contained to the ground a latent ambiguity is disclosed. For example, by thereby showing a variance between the course and distant calls and some natural or artificial object called for in the description contained in the assignment. Unless this is done, extrinsic evidence is not admissible; fraud, accident, or mistake not having been alleged. "Where the calls of a survey are not ambiguous or inconsistent, in the absence of fraud or mistake, extrinsic or parol evidence may not be resorted ·to in order to vary the description and show that the survey occupies some other position. To permit such evidence to vary the calls would be to violate the fundamental rule that extraneous evidence will not be heard to vary the terms of a written instrument. * * * However, if the calls, when applied to the ground, disclose a latent ambiguity, that is, some one or more of the calls are found to be incorrect, then extrinsic evidence may be introduced in order to determine the conflict and show the land actually intended to be embraced." 7 Tex. Jur., § 77, pp. 233, 234.

■ Defendant in error apparently attaches some importance to the hereinafter quoted provision in the assignment from Lewis to it "and being the same land described in the deed from Henry York and wife, Ola York, to L. A. Smith," etc.; that is, it contends that the description in the deed referred to is admissible to show the land intended to be conveyed, and if it does so, to enlarge the grant actually included in the assignment. A similar contention was made with reference to a clause: "Being the same premises conveyed to me by Ezra Holden, by deed dated May 7, 1829," in Lovejoy v. Lovett, 124 Mass. 270, 272. The court held that the quoted language was merely a reference to show chain of title. This case was quoted with approval by the Supreme Court of Texas in Cullers v. Platt, et al., 81 Tex. 258, 16 S. W. 1003. Also see Whaley v. ·Lemmon (Tex. Civ. App.) 281 S. W. 321.

■■ The deed from Henry York and wife to L. A. Smith refers to two bearing trees, and much parol testimony was introduced to show the location of such trees. Such evidence does not become admissible until, by applying the description contained in the assignment to the ground, a conflict is shown between the calls for course and distance and the calls for a post, a boundary line, a corner of an adjoining survey, or some object called for in the field notes. When this was done, the evidence became admissible. State v. Talkington (Tex. Civ. App.) 274 S. W. 314; Diffie v. White (Tex. Civ. App.) 184 S. W. 1065; Hamman v. San Jacinto Rice Co. (Tex. Civ. App.) 229 S. W. 1008; San Jacinto Rice Co. v. Hamman (Tex. Com. App.) 247 S. W.·500; Woods v. 'Selby Oil & Gas Co. (Tex. Civ. App.) 2 S.W.(2d) 895; Id. (Tex. Com. App.) 12 S.W.(2d) 994. The description contained in instruments in the chain of title other than the conveyance to the defendant in error is not admissible for the purpose of showing an ambiguity in the description in such conveyance and thereby authorize the introduction of parol or extrinsic evidence of the intention of the parties in making the conveyance. "Where an oil lease described the land by reference to the deed to grantor, where it was described by courses and distances from a designated corner, without calls for any other objects, evidence that in a deed to a preceding grantor there was a call for the same courses and distances, and also a call to the corner of another tract, with evidence by a surveyor that the calls in the deed did not reach to

any such corner, and that he located at a greater distance what he always had assumed to be the corner called for, does not establish any ambiguity, either latent or patent, in the description incorporated in the lease by reference, so as to authorize parol evidence that the lessor intended to lease all of his land, which included that inclosed by the extended call." Crabb v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 238 S. W. 279.

■ Defendant in error contends that if it did not get title to the oil, gas, and mineral estate in controversy by virtue of the assignment to it from Lewis, then that it acquired such title by reason of the instrument denominated a correction lease executed by L. A. Smith and wife and heretofore set out. The correction lease was nothing more than a declaration by the Smiths of their intention in executing the oil and gas lease to Lewis, and added little, if anything, to the declaration contained in said lease that it was their intention to "convey all the land owned by us in the John Walling Survey in Van Zandt County, Texas." It does not purport to be a conveyance of a present interest in land, and we are of the opinion that such instrument was insufficient as a lease or conveyance of the property in controversy. Crabb v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 238 S. W. 279, 281; Texas Pacific Coal & Oil Co. v. Crabb (Tex. Com. App.) 249 S. W. 835.; Humble Oil & R. Co. v. Johnston (Tex. Civ. App.) 76 S.W.(2d) 818; Davis v. George, 104 Tex. 106, 134 S. W. 326.

In view of the disposition to be made of this case, it is unnecessary to decide whether the provision in the lease from L. A. Smith and wife to E. G. Lewis that it was the grantors' intention to convey all land owned by them in the Walling survey had the effect to enlarge the grant contained in the preceding specific description by metes and bounds so as to bring same within the scope of the recent decision of the Commission of Appeals in the cases of Sun Oil Co. v. Burns et al., 84 S.W.(2d) 442; Sun Oil Co. v. Bennett et al., 84 S.W.(2d) 447; and Gulf Production Co. et al. v. Spear, 84 S.W.(2d) 452, 453.

Much parol testimony was introduced to show that the posts and the boundary lines and corners of adjoining surveys referred to in the assignment to the Pure Oil Company were not located at the distances called for in said assignment, but were, in fact, located at greater distances from the preceding corners called for in said instrument, thereby extending the length of the boundary lines for more than the 475.2 varas recited in said assignment.

The assignment to defendant in error recites that the tract described is the northeast corner of a tract of land set apart to L. C. Alexander; that its beginning point is the northeast corner of said Alexander tract; that it extends from the northeast corner to the northwest corner not only 475.2 varas but to a post. There is a call for a post at all corners except the beginning point. There is also a call for the south boundary line of the north half of lot No. 5, for the north boundary of the south half of said L. C. Alexander share, and for the northeast corner of the McAdams survey.

■ The field notes in the metes and bounds description become ambiguous and inconsistent when applied upon the ground. As stated, there is a call in the lease and in the assignment to run from the northwest corner south 475.2 varas to post for corner on south boundary line of the north half of lot No. 5, the same being the north boundary line of the south half of the L. C. Alexander share. The map introduced by the Pure Oil Company, together with the testimony of its witnesses in reference thereto, is sufficient to authorize the conclusion that the actual distance to such line is 486.5 varas. If this be true, there is a variance between the call for adjoinder and the call for distance. The next call is to go with such line 475.2 varas to the northeast corner of the McAdams survey. If the call south is only run out 475.2 varas, it is evident that the call for adjoinder with the south boundary line cannot be reached, and it is also plain that the northeast corner of the McAdams survey will never be reached. Either the calls for course and distance, or the call for adjoinder with this dividing line, and with the northeast corner of the McAdams survey, must be disregarded. Under all the authority when such conflict is shown, the calls for course and distance will be held inferior to and be controlled by the call for adjoinder. The next call is to go 475.2 varas to the place of beginning. The evidence of defendant in error is sufficient to justify the conclusion that such distance is actually 483.4 varas instead of 475.2 varas. Here it is necessary to disregard either the call for course and distance, or the call for the place of beginning. Such inconsistency is also shown by the fact that reversing the calls from the southeast corner of the

Smith tract marked with the letter "F" on the map of defendant in error at page 131 of the statement of facts, and which is the northeast corner of the McAdams survey, and following only the calls for courses and distance, the accepted line of the Smith tract will not be reached, nor will the true northeast corner (about the location of which there is no dispute) marked with the letter "A" on said map be reached. Therefore, when the field notes contained in the metes and bounds description on the ground are followed, we find that the calls for course and distance are inconsistent with the call for adjoinder with the south boundary line of the north half of block 5, the calls to run with such line east, and the call for the northeast corner of the McAdams survey. Either these calls must be disregarded, or the call for distance must be disregarded. In such case the call for distance must yield. Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27; Sanger Bros. v. Roberts, 92 Tex. 312, 48 S. W. 1.

■ The testimony of Oscar Swain, who was present when the survey was actually made, and the corners located and marked, and the testimony of the engineer and surveyor, Stiles, and others, is sufficient, we think, to authorize a finding that when the description contained in the assignment is applied to the ground that a latent ambiguity or conflict between the calls for distance and the location of the post and boundaries and corners of adjoining surveys called for in said instrument is disclosed. This being true, extrinsic and parol evidence was admissible to show the location of the true corners and boundaries, and to show the land actually conveyed and that intended to be embraced in the field notes, and to settle the conflict between the calls for distance and the call for adjoining tracts, monuments, and objects on the ground called for in such field notes. 7 Tex. Jur. p. 174; Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27.

■ It would be impracticable to set out the testimony of numerous witnesses covering many pages of the statement of facts, but we deem it sufficient to say that in our opinion the evidence justifies the above-stated conclusion, and further that it is sufficient to support the findings of the jury. Moreover, we are of the opinion that the metes and bounds calls having been shown to conflict with calls for posts, boundaries, and corners of adjoining surveys, the evidence was sufficient to justify the conclu-sion that the land awarded defendant in error was actually conveyed to it by the description in the field notes contained in the lease and assignment to defendant in error. Diffie v. White (Tex. Civ. App.) 184 S. W. 1065; Talkin v. Anderson (Tex. Sup.) 19 S. W. 350; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Bassett v. Martin, 83 Tex. 339, 18 S. W. 587; Moore v. Loggins (Tex. Civ. App.) 114 S. W. 183; Barrow v. Murray (Tex. Civ. App.) 212 S. W. 178; St. Louis, San Francisco & Texas Ry. Co. v. Payne, 47 Tex. Civ. App. 194, 104 S. W. 1077; Hughes v. Sandal, 25 Tex. 162; 7 Tex. Jur., sec. 33, pp. 159, 160, and sec. 44, pp. 178, 179, and § 46, p. 181.

■ This brings us to a consideration of the contention by the plaintiff in error that the trial court committed reversible error in overruling its motion for a new trial because of alleged newly discovered evidence. The alleged newly discovered evidence was to the effect that the stumps of the bearing trees claimed by the witnesses for defendant in error to be hickory trees, and to be the trees referred to in the deed from Henry York and wife to L. A. Smith, as establishing one of the corners of the survey in question, had been in fact determined by a tree expert to be not the stumps of hickory trees, but the stumps of oak trees. One of the witnesses who testified for plaintiff in error with reference to these stumps, it was alleged, had, after the trial, returned to the site of the stumps and discovered facts which, it is claimed, would impeach the testimony of witnesses for defendant in error on this point. The transcript reveals that the defendant in error by its pleadings fixed the location of the northwest corner of the Smith tract by these two hickory trees described in such petition by course and distance from said corner about two years prior to the trial of this case. It is apparent that with such information in the petition the plaintiff in error should have known that the defendant in error expected to prove that which it had alleged, and by the exercise of due and proper diligence could and would have learned of the facts that they now desire to establish upon the trial of another case. These stumps had been examined by plaintiff in error and his surveyor prior to the trial of the case, and such surveyor had been on the ground on several occasions and had surveyed the land in controversy for the plaintiff in error. Under such situation we decline to hold that the trial court abused its discre-

tion in overruling plaintiff in error's motion for a new trial.

No reversible. error appearing, the judgment of the trial court is affirmed.

FUNDERBURK, J., disqualified and not sitting.